Michael G. Tafoya
P.O. Box 930
Maricopa, AZ 85139
520-450-0537
State Bar No. 018655
michael.tafoya@azbar.org

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA, PHOENIX DIVISION

| | |
|---|---|
| Roderick Rickert; Adam Child; Investment Properties of Arizona, LLC, an Arizona LLC; Titan Capital Group, LLC, an Arizona LLC; Titan Capital Holdings, LLC, a Nevada LLC; Titan Capital Management, LLC, an Arizona LLC; Titan Funding Group, LLC, an Arizona LLC; Look Inside Realty, LLC, an Arizona LLC; Look Inside Realty, LLC, a Nevada LLC,<br><br>Plaintiffs<br><br>v.<br><br>Kurt Francis and Jane Doe Francis, husband and wife; John Kawakami and Jane Doe Kawakami, husband and wife; Los Angeles Independent Media Center; la.indymedia,org; Riceball.com;<br><br>Defendants | No. 2:13-cv-02326 DGC<br><br>**OBJECTION TO MOTION TO DISMISS** |

Plaintiffs object to the May 5, 2014, Motion to Dismiss filed by Defendants Kawakami, Los Angeles Independent Media Center, la.indymedia,org, and Riceball.com as follows.

47 U.S.C. § 230 is the Communications Decency Act or "CDA".

The CDA grants a level of immunity, but that immunity protects only certain people against certain types of claims. "The Communications Decency Act was not meant to create a lawless noman's-land on the Internet." Fair Housing Coun., San Fernando v. Roommates.Com, 521 F.3d 1157, 1164 (9th Cir., 2008).

Determining CDA immunity is a two-step process. First, the court must determine if the person is the type of person to whom the immunity applies. Second, the court must

determine if the claim or cause of action is for the type of tort liability covered by the statute.

The problem with the Defendants' Motion to Dismiss is that it starts with the false premise that the CDA protects everyone (except an original author) from everything. Take, for example, the Defendants' assertion that, "[b]y its plan language § 230 creates a federal immunity <u>to any cause of action</u> that would make service providers liable for information originating with a third party user of the service". Motion at 3:22-24 (underscore added).

That assertion is wrong in many ways and it directly contradicts 47 U.S.C. § 230(e), which provides that § 230 has no effect on criminal law, intellectual property law, and communications privacy law. The Defendants are asking this court to grant CDA immunity to Plaintiffs' intellectual property law claims. Count II of Plaintiffs' two-count complaint is for "Copyright Infringement" and seeks relief pursuant to 17 U.S.C. §§ 502, 504, and 505 (the copyright protection statutes). The Defendants are asking this court to "dismiss the above numbered matter [] for which they are immune pursuant to §230 . . . ." Motion at 5:17-20. Section 230, by its terms, does not apply to the copyright infringement claims.

Dismissal is not appropriate because the two-step process shows that CDA immunity does not apply to any of the Plaintiffs' claims.

The standards:

Step 1: Are the Defendants the type of people to whom the immunity applies?

"No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). An "interactive computer service" is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2).

Los Angeles Independent Media Center, la.indymedia.org, and ricebowl.com are immune from tort liability. John and Jane Doe Kawakami are not immune.

2

Plaintiffs' Complaint ¶ 32 contains the following:

> To clarify, the Plaintiffs acknowledge and accept that 47 U.S.C. § 230(c)(1) protects Defendants Los Angeles Independent Media Center, la.indymedia.org, and ricebowl.com from tort liability for the statements published by Kurt Francis and John Kawakami.
>
> When Kurt Francis put the statements on la.indymedia.org through the Los Angeles Independent Media Center, § 230 protects la.indymedia.org and the Los Angeles Independent Media Center from liability for statements made by Kurt Francis, who was the "other information content provider" under § 230.
>
> When John Kawakami put the statements on ricebowl.com,§ 230 protects ricebowl.com from liability from statements made by John Kawakami, who was the "other information content provider" under § 230.
>
> Ricebowl.com is further distinguished from la.indymedia.org because ricebowl.com does not allow third parties, such as Plaintiff Adam Child, for example, to post information on the web-site. John Kawakami must post the information himself or have someone do it on his behalf.
>
> For the purpose of this Count of the complaint, Defendants Los Angeles Independent Media Center, la.indymedia.org, and ricebowl.com are named solely for the purpose of allowing the Plaintiff to obtain an injunction ordering those Defendants to remove the statements from the web sites. For the purpose of this Count, they are not named for personal liability.[1]

Thus, Los Angeles Independent Media Center, la.indymedia,org, and Riceball.com are immune from tort liability because they are "interactive computer services". This is irrelevant because the Plaintiffs do not seek tort liability against those defendants.

John and Jane Doe Kawakami are liable.

In <u>Fair Housing Coun., San Fernando v. Roommates.Com</u>, 521 F.3d 1157, 1164 (9th Cir., 2008), the defendant unsuccessfully argued that the people who answered questions on the website were the "information content providers". The Court concluded that, "the party responsible for putting information online may be subject to liability, even if the information originated with a user." <u>Id.</u> at 1165 (<u>citing</u>, <u>Batzel v. Smith</u>, 333 F.3d 1018, 1033 (9th Cir.2003)).

Here, Kawakami's actions were worse than in Roommates.Com. While Kawakami was certainly a "user" of an interactive computer service, he was also the

---

[1] This is not intended in any way to relieve these Defendants of liability for copyright infringement, alleged in the Count II below. (Footnote in original Complaint.)

3

information content provider. Kawakami provided the information to ricebowl.com. He did not merely find it there, and then repost it or comment on it. Until John Kawakami provided the "information content" to ricebowl.com, ricebowl.com did not have it. Plus, by itself, the manner in which Kawakami named the page, "riceball.com/been-screwed-by-infoclosure-la-imc" provided false information by making any reader falsely believe that the posts on la.indymedia.org were somehow related to Plaintiff infoclosure. It also, by itself, created the negative impression of infoclosure (that someone's been "screwed" by infoclosure) even if the reader did not read the blog. As the content provider, Kawakami is liable.

Step 2: Are the claims or causes of action for tort liability covered by the statute?

The CDA's approach to immunity tells much about the scope and application of the immunity. The statute does not use the word "immunity". The statute does not state that a person is immune from "X, Y, and Z". Instead, the statute provides that, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

> The specific provision at issue here, § 230(c)(1), overrides the traditional treatment of publishers, distributors, and speakers under statutory and common law. As a matter of policy, "Congress decided not to treat providers of interactive computer services like other information providers such as newspapers, magazines or television and radio stations, all of which may be held liable for publishing or distributing obscene or defamatory material written or prepared by others." Blumenthal v. Drudge, 992 F.Supp. 44, 49 (D.D.C. 1998).

Batzel v. Smith, 333 F.3d 1018, 1026 (9th Cir., 2003).

Thus, the statute immunizes certain persons in the online world from the tort liability that would have traditionally been imposed upon a publisher or distributor. This is a tort-liability-protection statute.

The Defendants rely heavily on Zeran v. America Online, Inc., 129 F.3d 327 (4th Cir. 1997). Rightfully so. Although that is a 4th Circuit case, its become a seminal decision relied upon by many 9th Circuit cases. In a detailed analysis, Zeran described

4

that the purpose and effect of the statutory immunity was to protect from tort liability that would stifle the growth of this communications medium:

> The purpose of this statutory immunity is not difficult to discern. Congress recognized the threat that tort-based lawsuits pose to freedom of speech in the new and burgeoning Internet medium. The imposition of tort liability on service providers for the communications of others represented, for Congress, simply another form of intrusive government regulation of speech . . . .
>
> None of this means, of course, that the original culpable party who posts defamatory messages would escape accountability . . . Congress made a policy choice, however, not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages . . . .
>
> Interactive computer services have millions of users ... the amount of information communicated via interactive computer services is therefore staggering. The specter of tort liability in an area of such prolific speech would have an obvious chilling effect. It would be impossible for service providers to screen each of their millions of postings for possible problems."

Zeran, 129 F.3d at 331.

The bottom line: if you are an online service that provides a forum for others to use for speech, then you are not to be considered the publisher or speaker of the content provided by third-parties. This does not eliminate tort liability for publishers. Rather, it defines an interactive computer service as something other than a "publisher". Thus, no tort liability. If you are the "party who posts defamatory messages" (Kawakami), then you do not escape accountability.

That is narrow scope immunity. It does not protect the person who provided the content (Kawakami) and it does not protect against anything other than tort liability.

The nature of the immunity is limited. To further limit it, Congress added 47 U.S.C. § 230(e), which provides that § 230 has no effect on criminal law, intellectual property law, and communications privacy law. The intellectual property law exclusion applies here.

"The immunity created by § 230(c)(1) is limited by § 230(e)(2), which requires the court to 'construe Section 230(c)(1) in a manner that would neither `limit or expand any law pertaining to intellectual property." Gucci Am., Inc. v. Hall & Assocs., 135

F.Supp.2d 409, 413 (S.D.N.Y.2001) (quoting § 230(e)(2)). As a result, the CDA does not clothe service providers in immunity from 'law[s] pertaining to intellectual property.'" Perfect 10, Inc. v. Ccbill LLC, 481 F.3d 751 (9th Cir., 2007).

Here, Plaintiffs claims and requests for relief are as follows:

A. Tort liability for providing false information content to ricebowl.com (against Kawakami only).

B. Copyright infringement (against all defendants).

C. Injunction to stop the continued publication of false information and copyrighted material (against all defendants).

The CDA does not provide immunity for any of this. The only applicable immunity protects Los Angeles Independent Media Center, la.indymedia,org, and Riceball.com from tort liability. For this reason, the Plaintiffs went out of their way to clarify in Complaint ¶ 32 that they are not seeking tort liability against these Defendants. They are seeking liability for copyright infringement, but the statute expressly excludes those claims from any § 230 immunity.

Finally, the Plaintiffs seek an injunction to stop the false information and copyrighted information from continuing to be made available to users of the websites.

47 U.S.C. § 230(c)(1) provides that, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." That provision means that Los Angeles Independent Media Center, la.indymedia.org, and ricebowl.com cannot be treated as the publisher or speaker of the information. It protects against tort liability   It does not provide any "immunity" nor protect from injunctive relief to force those Defendants to take the information off of their websites.

Defendants Los Angeles Independent Media Center, la.indymedia.org, and ricebowl.com are necessary defendants. Any injunction against Kurt Francis and John Kawakami to stop publishing would be pointless. They do not have the authority to force the other Defendants to change their web sites.

The Court should deny the Motion to Dismiss.

Submitted on May 19, 2014.

Michael G. Tafoya
Attorney for the Plaintiffs

Copy of the foregoing mailed on
May 19, 2014, to:

Paul Gattone
312 S. Convent Avenue
Tucson, AZ 85701
Attorney for select Defendants

_____